LTL ATTORNEYS LLP
Dat Nguyen (Bar No. 280755)
dat.nguyen@ltlattorneys.com
300 South Grand Ave., 14th Floor
Los Angeles, CA 90071
Tel: 213-612-8900
Fax: 213-612-3773

DUNHAM IP LAW LLC
Tyler Dunham (Admitted *Pro Hac Vice*)
(Ohio Bar No. 83897)
tdunham@dunhamiplaw.com
P.O. Box 566
Dublin, OH 43017-9998
Tel: 614-902-3913
Fax: 614-907-4155

*Attorneys for Defendant*
*DREAMBUILDER TOY LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LALTITUDE, LLC, a California Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>DREAMBUILDER TOY, LLC an Ohio Limited Liability Company; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:21-cv-9324-JWH-JPR<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR IMPROPER VENUE**<br><br>Hearing:   March 18, 2022<br>Time:       9:00 a.m.<br>Location:  Courtroom 2<br><br>Judge: Hon. John W. Holcomb |

## I. INTRODUCTION

There is no dispute that Dreambuilder does not reside in this district. Instead, Laltitude contends in its Opposition that it may sidestep the unambiguous provisions of the Patent Venue Statute by contending that the distribution of Dreambuilder's products by Amazon provides a "regular and established place of business" in this district. This is simply not true as discussed below.[1] In fact, the Amazon documents submitted by Laltitude support the finding that Amazon cannot serve as such a proxy. Laltitude has failed to meet its burden showing that venue is proper in this district. Accordingly, the Court should grant Dreambuilder's motion to and dismiss.

## II. DREAMBUILDER MET ITS L.R. 7-3 OBLIGATIONS DESPITE LALTITUDE'S GAMESMANSHIP

Laltitude incorrectly contends that Dreambuilder failed to properly meet and confer under Local Rule 7-3 (Opp. at 3-4) and ignores that it created a scenario that it now tries to use against Dreambuilder. Laltitude glosses over Dreambuilder's numerous early attempts to establish a line of communication. *See* Dunham Decl., Exh. B (Dkt. No. 21-4) (parties' email communications); *see also* Dkt. No. 21 at 2 (summarizing correspondence). As part of this early communication, on January 26, 2022, Dreambuilder's counsel specifically requested an extension of time to respond to the complaint:

> My client is proceeding to engage in the litigation, but is currently searching for California counsel. We would appreciate it if you would agree to an extension of time to secure counsel, draft, and file an Answer. <u>Please indicate your response to our request and file your approval with the court as soon as possible</u> and we will be sure to move as quickly as possible on our end to get the necessary docs

---

[1] Laltitude contends that "[Dreambuilder] apparently concedes that it has engaged in acts of infringement in this district." Dkt. No. 23 ("Opp.") at 5:7-8. Not so. Dreambuilder obviously does not concede infringement of invalid patents. *See* Dkt. No. 21-3.

| CASE NO. Case No. 2:21-cv-9324-JWH-JPR | -1- | DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS |

prepared and filed.  *See* Dunham Decl., Exh. B at ECF Page ID # 111-112 (Dkt. No. 24-1) (emphasis in original).

Having received no response to this request, Dreambuilder followed up again on January 28 and January 29 with requests for an extension to respond to the Complaint (due on February 7, 2022).  *Id*. at ECF Page ID # 109-111.  Laltitude did not respond to the extension requests.  *See id*.  Given that the last day to respond to Complaint was February 7, Laltitude's lack of response then forced Dreambuilder to seek a meet and confer by January 31 (the last date to meet and confer under Local Rule 7-3) concerning this motion.  *Id*. at ECF Page ID # 109-111.

Laltitude's counsel submitted a declaration stating that he was busy on January 31 because of "thirteen (13) other previously scheduled meetings." Khalifeh Decl., ¶ 10 (Dkt. No. 23-1).  While Dreambuilder believes that it has fully complied with L.R. 7-3, Laltitude could have obviated the need for a meet and confer on January 31 if it had just agreed to an extension to respond to the Complaint.  Laltitude's gamesmanship should not be rewarded as it violates the Central District's Civility and Professionalism Guidelines.  Specifically, Section 2 states that "[u]nless time is of the essence, as a matter of courtesy [opposing counsel] will grant first requests for reasonable extensions of time to respond to litigation deadlines."  Laltitude appears to justify its refusal to agree to an extension solely on the baseless contention that "Defendant had plenty of time to make arrangements to file a timely response to Plaintiff's Complaint."  *Id*., ¶ 7.

Yet, despite Laltitude counsel's busy day on January 31, rather than engaging in a civil meet and confer process, he instead sent a lengthy and aggressive email lecturing about the purpose of the meet and confer requirement, re-asserting portions of the Complaint, and threatening sanctions against Dreambuilder.  *See* Dunham Decl., Exh. B at ECF Page ID # 107-108 (Dkt. No. 24-1).  In response, Dreambuilder noted that any of Laltitude's other counsel who appear on the Complaint could meet and confer.  *Id*. at ECF Page ID # 106-107.  Laltitude refused

1  to accommodate the request and again threatened sanctions. *Id*. at ECF Page ID #
2  104-105.  Dreambuilder continued to offer Laltitude an opportunity to meet and
3  confer after January 31, but such efforts were ignored. *See* Dunham Decl., Exh. B at
4  ECF Page ID # 104 (Dkt. No. 24-1).

5        Dreambuilder respectfully submits that the parties' communications evidence
6  that it has satisfied the meet and confer obligations under L.R. 7-3.

### III. LALTITUDE FAILS TO ESTABLISH THAT DREAMBUILDER HAS A "PHYSICAL PLACE IN THE DISTRICT"

#### A. Laltitude Mischaracterizes Dreambuilder's Relationship with Amazon as a "Lease" of Shelf Space

Laltitude attempts to manufacture a "physical place in this district" by incorrectly asserting that "[b]ecause Defendant operates via Amazona's [*sic*] FBA program, Defendant effectively possesses or controls the shelf space it leases for its products in Amazon warehouses.  By the terms of its agreement with Amazon, Defendant retains control over its products by providing stock to Amazon on its timeline, setting prices, and removing products at its discretion." Opp. at 5:22-27.

While "the [venue] statute could be satisfied by any physical place that the defendant could 'possess[] or control,'" such as "leased shelf space or rack space," *In re Google*, 949 F.3d 1338, 1343-44 (Fed. Cir. 2020), the Federal Circuit and Supreme Court have specifically cautioned against reading the venue statue broadly or liberally: "as we noted in *Cray*, the Supreme Court has cautioned against a broad reading of the venue statute." *Id. at* 1346 (citing *In re Cray*, 871 F.3d 1355, 1361 (Fed. Cir. 2017)).  "The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a liberal construction." *Google*, 949 F.3d at 1347 (citing *Olberding v. Ill. Cent. R. Co.*, 346 U.S. 338, 340 (1953)).

CASE NO. Case No. 2:21-cv-9324-JWH-JPR     -3-     DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    The narrow application of the venue statute is illustrated in *Reflection, LLC v. Spire Collective LLC*—a case analogous to the situation here in which the court found that the use of Fulfillment by Amazon is not sufficient to establish venue under 28 U.S.C. § 1400(b). No. 17CV1603-GPC(BGS), 2018 WL 310184, at *2–4 (S.D. Cal. Jan. 5, 2018). In *Reflection*, the plaintiff attempted to establish proper venue based on the defendant's use of Fulfillment by Amazon. The court found that venue was not proper because "Defendant has … no control over which FCs [Fulfillment Centers] its products will be sent, and once stored at one Amazon FC, Amazon has discretion to redistribute [Defendant's] products to another Amazon FC. Since [Defendant] has no control over its products once they are sent to Amazon FCs, these storage centers cannot be said to be the "place of Defendant." *Id.* at *4. Additionally, the court also found that the Amazon agreement is not a lease for storage space. *Id.* The same findings apply here.

Laltitude provided the Court with the contract governing Amazon's FBA ("Fulfillment by Amazon") service—referred to as the "Amazon Services Business Solutions Agreement" (hereinafter "Amazon Service Agreement"). Khalifeh Decl., ¶¶ 4-5 (Dkt. No. 23-1), Exhs. A and B (Dkt. No. 23-2); *see also* Opp. at 2:2-10. Although parties disagree as to the characterization and nature of Amazon's services, Laltitude does not identify any provision in the Amazon Services Agreement that establishes a lease of shelf space. Indeed, like in *Reflection*, Dreambuilder participation in Fulfillment by Amazon does not result in leasing (or possessing or controlling) any Amazon shelf space, rather Dreambuilder contracts with Amazon for a variety of <u>services</u>. *See* Amazon Service Agreement, Dkt. No. 23-2, Exh. B at ECF Page ID # 137-180. As stated in the Amazon Service Agreement: "'Service' means each of the following *services*: Selling on Amazon, *Fulfillment by Amazon*, Amazon Advertising (including Amazon Sponsored Products) . . . ." *Id*. at ECF Page ID # 152 (emphasis added). Amazon Service

Agreement further explains: "If any of Your Products are fulfilled using Fulfillment by Amazon, the Fulfillment by Amazon *Service* Terms for the applicable Amazon Site will apply to the storage, fulfillment, and delivery of such Amazon-Fulfilled Products" *id*. at ECF Page ID # 156, and Amazon "will provide *storage services*" *id*. at ECF Page ID # 165 (emphasis added). Amazon's terms further state: "As part of our fulfillment *services*, we will ship Units from our inventory of Your Products." *Id*. at ECF Page ID # 165. There is no lease with Amazon of shelf space or otherwise.

### B. Dreambuilder Does Not "Possess or Control" Any Part of Amazon's Warehouses

The Amazon Service Agreement does not provide any right for Dreambuilder to possess or control any part of any Amazon's warehouse. *See* Dkt. No. 23-2, Exh. B. Indeed, even when specifically requested, Amazon will not permit Dreambuilder to possess or inspect any part of any Amazon warehouse. *See* Supplemental Declaration of Kai Liu ("Liu Suppl. Decl."), ¶ 5.

Similarly, the Amazon Services Agreement does not provide any right for Dreambuilder to control any shelf space at any Amazon warehouse or where any products are stored. *Reflection,* 2018 WL 310184 at *4; *see* Dkt. No. 23-2. Exh. B; Liu Suppl. Decl., ¶¶ 3-9. All shelf space remains within the exclusive possession of Amazon and only Amazon is permitted to control which facility will house products: "We will not be required to physically mark or segregate Units from other inventory units…. We may move Units among facilities." Dkt. No. 23-2 at ECF Page ID # 165. Amazon also maintains strict control over storing products: "We reserve the right to change scheduling restrictions and volume limitations on the delivery and storage of your inventory in fulfillment centers in accordance with Section 15 of the General Terms, and you will comply with any of these restrictions or limitations." *Id*.

As shown, Dreambuilder does not have any control over how Amazon facilities stores its products, and therefore cannot possibly "possess or control" any shelf space at any Amazon warehouse.

## IV. LALTITUDE FAILS TO PROVE THAT DREAMBUILDER HAS A "REGULAR AND ESTABLISHED PLACE OF BUSINESS" IN THIS DISTRICT

Without any evidentiary support, Laltitude contends that Dreambuilder's business is "regular and established" because it "stores and distributes its goods from Amazon's warehouses in this district." Opp. at 6:1-7:2. Such bald statements should carry no weight. As demonstrated above, Amazon solely controls the location of storage and distribution of products under its services provided under Fulfillment by Amazon.

Moreover, "[a] 'place of business' generally requires an employee or agent of the defendant to be conducting business at that place." *Google*, 949 F.3d at 1344. "The essential elements of agency are (1) the principal's 'right to direct or control' the agent's actions, (2) 'the manifestation of consent by [the principal] to [the agent] that the [agent] shall act on his behalf,' and (3) the 'consent by the [agent] to act.'" *Google*, 949 F.3d at 1344 (citing *Meyer v. Holley*, 537 U.S. 280, 286 (2003)). Laltitude asserts that "[b]y providing these services to Defendant, Amazon accomplishes Defendant's objective of selling products. Amazon, therefore, acts as Defendant's agent, rendering Amazon's warehouses a 'regular and established place of business' in this district." Opp. at 7:25-28. Laltitude's argument fails for at least the following reasons.

### A. Dreambuilder Has No "Right to Direct or Control" Amazon Storage or Fulfillment Services

To show a proper agent/principal relationship for the purposes of storage and fulfillment of orders, Laltitude must show that Dreambuilder has a "right to direct or

control" where and how Dreambuilder's products will be stored by Amazon or how Amazon fulfills the orders. *Google*, 949 F.3d at 1344 (citation omitted).

As discussed above, Amazon is contractually vested with the sole right to decide which facilities will be used to store Dreambuilder's products. *See, e.g.,* Dkt. No. 23-2 at ECF Page ID # 165 (stating "[w]e may move Units among facilities;" "[w]e reserve the right to change scheduling restrictions and volume limitations on the delivery and storage of your inventory in fulfillment centers in accordance with Section 15 of the General Terms, and you will comply with any of these restrictions or limitations."). Dreambuilder cannot control which facilities will be used, or the manner in which Defendant's products are marked or segregated from other products. *Id*. at ECF Page ID # 165 ("We will not be required to physically mark or segregate Units from other inventory units"); *see also* Liu Suppl. Decl., ¶¶ 3-7. Similarly, Dreambuilder has no ability to direct or control how Amazon handles fulfillment (picking, packing, and shipping). *Id.* at ECF Page ID # 165; *see also* Liu Suppl. Decl., ¶¶ 8-9.

It is clear from the Amazon Services Agreement that Dreambuilder does not have any such contractual right to direct or control Amazon, and this right could not possibly be bargained for with Amazon, who provides all fulfillment service customers with a non-negotiable contract approximately forty-six pages long. *See generally* Dkt. No. 23-2, Exh. B. Amazon dictates where products are stored and how/when they are shipped to customers. *See e.g., id.* at ECF Page ID # 165; Liu Suppl. Decl., ¶¶ 3-9. Said another way, Dreambuilder is a single-member limited liability company, while Amazon is one of the largest corporate goliaths ever known, making negotiations for special consideration or amendments to the standard services contract impossible.

Dreambuilder has no right to "direct or control" Amazon to take any particular action with respect to the storage and fulfillment of Dreambuilder's products. No agency relationship exists.

### B. The Amazon Services Agreement Expressly Prohibits an Agency Relationship

Indeed, Amazon unequivocally states that use of Amazon's services by a third-party seller like Dreambuilder does not create an agency relationship: "[Y]ou and [Amazon] are independent contractors, and nothing in this Agreement will create any partnership, joint venture, *agency*, franchise, sales representative, or employment relationship between us." Dkt. No. 23-2 at ECF Page ID # 144 (emphasis added). Further, "[b]ecause Amazon is *not* your agent… or the customer's agent for any purpose, Amazon will not act as either party's agent in connection with resolving any disputes between participants related to or arising out of any transaction." Id. at ECF Page ID # 147 (emphasis added). Amazon has made clear that no agency relationship exists with third-party sellers like Dreambuilder.

### V. AMAZON'S WAREHOUSES ARE NOT THE "PLACE OF DEFENDANT" UNDER THE PATENT VENUE STATUTE

As discussed, Amazon's warehouses are clearly not the "place of defendant." And again without any evidentiary support, Laltitude simply asserts: "In this manner, there is little doubt that Defendant's products are not only stored at Amazon's warehouses in this district but they are also sold and distributed therefrom." Opp. at 8:12-14. Such unsupported statements should be disregarded.

### VI. LALTITUDE DOES NOT DISPUTE THAT ITS UNFAIR COMPETITION CLAIM SHOULD BE DISMISSED

Laltitude's claim for unfair competition also lacks proper venue in this district. As explained in Dreambuilder's opening brief, this claim is ancillary to a claim for patent infringement—for which venue is lacking. Dkt. No. 21 at 5:26-

6:24.  Laltitude does not address the point and thus concedes that should the Court find improper venue, then this case should be dismissed in its entirety.

## VII. LALTITUDE SHOULD NOT BE PERMITTED TO AMEND THE COMPLAINT

Laltitude now admits that it plead to the wrong venue statute (28 U.S.C. § 1391(b) and (c)) in its Complaint, and that venue is governed by the Patent Venue Statute (28 U.S.C. §1400(b)).  *See* Opp. at 4:18-23.  Laltitude asks the Court for permission to amend its Complaint.  *Id*. at 8:15-9:2.

Although the district court should grant the plaintiff leave to amend if the claim can possibly be cured by additional factual allegations, *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995), the district court need not grant leave to amend if amendment would be futile, *see Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051–52 (9th Cir. 2008) (finding that amendment would be futile where plaintiff was granted leave to amend once and the amended complaint contained the same defects as the prior complaint).

Here, no amendment will cure the fact that this district is not the proper venue under the Patent Venue Statute.  Because amendment would be futile, the Court should deny Laltitude's request and dismiss this case.

## VIII. CONCLUSION

For the foregoing reasons and as set forth in its opening brief and supporting declarations, Dreambuilder respectfully requests that the Court grant its motion to dismiss without leave to amend.

DATED:  March 4, 2022

Respectfully submitted,

LTL ATTORNEYS LLP

By  /s/ *Dat Nguyen*
Dat Nguyen

LTL ATTORNEYS LLP
Dat Nguyen (Bar No. 280755)
dat.nguyen@ltlattorneys.com
300 South Grand Ave., 14th Floor
Los Angeles, CA 90071
Tel:  213-612-8900
Fax:  213-612-3773

DUNHAM IPLAW LLC
Tyler Dunham (Admitted *Pro Hac Vice*)
(Ohio Bar No. 83897)
tdunham@dunhamiplaw.com
P.O. Box 566
Dublin, OH  43017-9998
Tel: 614-902-3913
Fax: 614-907-4155

*Attorneys for Defendant*
*DREAMBUILDER TOY, LLC*